IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 7:19-CR-00010 (WLS-TQL) |
| | : | |
| CLINT ROBERT MCDONOUGH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

On September 29, 2022, the Court held a final hearing on the Government's Petition to revoke Defendant Clint McDonough's supervised release (hereinafter "Revocation Report"), filed on September 22, 2022. (Doc. 59.) On August 7, 2019, Defendant pled guilty to Count One of a one-count Indictment for Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(a). (Doc. 26, at 1.) Defendant was sentenced to 18 months of imprisonment followed by five years of supervised release. (Docs. 26; 44.) Defendant's sentence also included the special condition that he reside at Dismas Charities, Inc., because he was homeless at the time of sentencing. (Doc. 44, at 3). Defendant was required to reside at Dismas for a period not to exceed 180 days and abide by the rules and regulations of that program, alcohol and drug testing and treatment, and mental health treatment. (*Id.*)

On February 18, 2020, Defendant completed his term of imprisonment and began his stay at Dismas Charities in Atlanta, Georgia. (*Id.*) During his stay at Dismas, Defendant started to apply for Social Security disability, but the process was delayed due to COVID-19. (*Id.*) Due to this delay with disability payments, Defendant expressed his concern about his upcoming release because he was unable to secure a residence. (*Id.*) So, on July 20, 2020, Defendant signed a waiver agreeing to an additional time, not to exceed 180 days, at Dismas. (*Id.* at 4). The Court signed the modification of conditions. (*Id.*)

On August 4, 2020, Defendant advised that he was now receiving Social Security disability benefits and asked about leaving Dismas because he could secure his own residence. (*Id.*) The following day, Defendant got into a verbal altercation with another Dismas resident.

1

(*Id.*) The staff at Dismas warned Defendant that his conduct was unacceptable, but Defendant said he no longer needed to stay at Dismas. (*Id.*) Because of his conduct, the staff at Dismas told Defendant to pack his stuff and leave, and Defendant started staying at the Efficiency Lodge in Atlanta. (*Id.*) He had stayed at Dismas for a total of 170 days. (*Id.*)

On September 1, 2020, Defendant was contacted and instructed to return to the Middle District of Georgia. (*Id.*) But Defendant requested permission to stay at the Efficiency Lodge until the end of September because he had already paid rent for the month; permission was granted. (*Id.*) Subsequently, Defendant was contacted again via phone call on October 1, 2020, to report to the U.S. Probation Office in Macon, Georgia. (*Id.*) On October 7, 2020, a probation officer discovered Defendant was evicted from the Efficiency Lodge and that Defendant was told by the hotel staff that he could be arrested for criminal trespass. (*Id.*) Defendant did not report a change of residence and his whereabouts were unknown. (*Id.*) Defendant also failed to respond to any of the probation officer's attempts to contact him. Thus, on November 1, 2021, a petition for revocation was signed by the Court and a warrant was issued. (*Id.*)

On December 10, 2021, a Bibb County, Georgia Sheriff's deputy responded to a public disturbance call at a local grocery store involving Defendant. (*Id.*) Defendant was allegedly harassing store customers and was asked to leave multiple times. (*Id.*) When officers arrived, they tried to make contact with Defendant, but Defendant kept walking away. (*Id.*) Defendant eventually complied, and once the deputy learned about Defendant's active federal warrant, Defendant was placed under arrest. (*Id.*) During the arrest, the deputy searched Defendant and found a small plastic bag that appeared to contain controlled substance. (*Id.*) Defendant was charged with offenses of Purchase, Possess, or Have Control of Controlled Substance in Schedule I or Narcotic in Schedule II (Felony) and Obstruction of Officers (Misdemeanor). (*Id.* at 4–5). The U.S. Probation Office was then contacted and notified of Defendant's whereabouts. (*Id.* at 4).

On or about February 21, 2022, Defendant was granted an own recognizance bond by the Bibb County Superior Court, and he was released from state custody. (*Id.* at 5). That same day, Defendant was turned over to the custody of the U.S. Marshal Service on the outstanding supervised release violation warrant. (*Id.*) On February 24, 2022, an initial appearance hearing

was held before the United States Magistrate Judge Thomas Q. Langstaff, and Defendant was ordered to remain in the custody of the U.S. Marshals until his final revocation hearing. (*Id.*)

At the final revocation hearing on September 29, 2022, the Court reiterated three conditions of supervised release that Defendant had violated, which were provided in the Revocation Report. (Doc. 44, at 3). The violations were: (1) Defendant failed to report to the probation office in Macon, Georgia on October 1, 2020, as instructed; (2) Defendant failed to leave the Northern District of Georgia and return to the Middle District of Georgia on October 1, 2020, as instructed; and (3) Defendant failed to refrain from violation of the law when he committed the offenses of Purchase, Possess, or Have Control of Controlled Substances in Schedule I or Narcotic in Schedule II (felony), in violation of O.C.G.A. § 16-3-30(c), and Obstruction of Officers (Misdemeanor), in violation of O.C.G.A. § 16-10-24(a) in Bibb County, Georgia. (*Id.*) The first and second violations constituted Grade C violation, and the third violation, as stated, constituted a Grade B violation. (*Id.* at 5).

Defendant admitted to the first and second violations. But as to the third violation, Defendant did not stipulate to the offense of Purchase, Possess, or Have Control of Controlled Substance in Schedule I or Narcotic in Schedule II, and Government also agreed to withdraw that offense; however, Defendant still admitted to the offense of Obstruction of Officers (Misdemeanor). Accordingly, the third violation was no longer a Grade B but a Grade C.

There were no objections to the Presentence Investigation Report (Doc. 26), and Defendant acknowledged that he had been served with the Petition and the Amended Petition for revocation and that he had reviewed it with his attorney. The Court advised Defendant of his rights to a hearing on the allegations, in which the Government would be required to prove the allegations by a preponderance of the evidence; to present evidence in his defense; and to testify (Defendant was also advised that he was *not required* to testify or present a defense)—all of which Defendant acknowledged he understood. Defendant thereafter admitted to all of the violations in the Revocation Report (Doc. 44), except for the Purchase, Possess, or Have Control of Controlled Substance offense, which Government withdrew.

The Court found that Defendant freely, knowingly, and voluntarily waived his right to a hearing and stipulated to the alleged violations of supervised release for purposes of the revocation hearing outlined at Violation Numbers 1 through 3 of the Revocation Report,

3

except for the offense of Purchase, Possess, or Have Control of Controlled Substances, which Government withdrew at the hearing. As such, the Court found that Defendant had committed the alleged and admitted violations by a preponderance of the evidence and that Defendant did violate the conditions of his supervised release, with the offense for the Purchase, Possess, or Have Control of Controlled Substances withdrawn.

The Court heard from the Government, Defense Counsel, and Defendant, and then declared Defendant's supervised release revoked.[1] The Court took into consideration Defendant's U.S. Sentencing Guidelines range of 5 to 11 months, which was based on Defendant's original criminal history category of III and Grade C violation. Based on the totality of the circumstances of this case, the Court found the sentencing guideline range adequate and sentenced Defendant to 11 months of imprisonment followed by 60 months of supervised release.

For the aforementioned reasons, the Revocation Report (Doc. 44) is **GRANTED** with Defendant's terms of imprisonment and supervised release properly adjusted pursuant to the withdrawal of the Purchase, Possess, or Have Control of Controlled Substances offense. Defendant's term of supervised release is hereby **REVOKED**. Defendant is sentenced to 11 months of imprisonment with 60-month term of supervised release to follow.

**SO ORDERED**, this 30th day of September 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[1] "Due process requires that the court state 'the evidence relied on and reasons for revoking [supervised release].'" *United States v. Dees*, 452 F. App'x 929, 931 (11th Cir. 2012) (quoting *United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994)). "This requirement is satisfied when the record is 'sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of supervised release and the evidence the decision maker relied upon.'" *Id.* (citations omitted).

4